**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| United States of America ex rel. RELATOR, LLC, a California limited liability company, | No. 25-2073 |
| *Plaintiff - Appellant*, | D.C. No. 3:22-cv-01158-LL-AHG |
| v. | |
| JOSHUA K. ERSKINE, an individual; CALCON MUTUAL MORTGAGE, LLC, a California limited liability company; DOES 1-10, | OPINION |
| *Defendants - Appellees*. | |

Appeal from the United States District Court
for the Southern District of California
Linda Lopez, District Judge, Presiding

Argued and Submitted April 23, 2026
Pasadena, California

Filed July 15, 2026

Before: Michelle T. Friedland and Eric D. Miller, Circuit Judges, and Mark C. Scarsi, District Judge.[*]

Opinion by Judge Scarsi

## SUMMARY[**]

### False Claims Act

The panel reversed the district court's dismissal, for failure to state a claim, of a qui tam action under the False Claims Act and remanded for further proceedings.

Relator, LLC, alleged that CalCon Mutual Mortgage, LLC, and its founder and chief executive officer, Joshua K. Erskine, made false statements in a Paycheck Protection Program loan application.

The panel held that Relator's claim was not barred under the False Claims Act's public disclosure bar, 31 U.S.C. § 3730(e)(4)(A), which prevents litigants from bringing claims based on facts that have been publicly disclosed in the news media or in government proceedings or reports. Assuming without deciding that information on PandemicOversight.gov qualifies as a federal report, the panel concluded that the information Relator pleaded in support of its claim was not "substantially the same" as the

---

[*] The Honorable Mark C. Scarsi, United States District Judge for the Central District of California, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

information disclosed on that website. The panel also concluded that CalCon's own website did not qualify as "news media" for purposes of the public disclosure bar.

The panel agreed with the district court that Relator failed to plead a facially plausible claim that CalCon falsely inflated its number of employees in its loan application materials. The district court, however, abused its discretion by denying Relator leave to amend its complaint.

## COUNSEL

Michael Eggenberger (argued), Hecht Partners LLP, New York, New York; Kathryn L. Boyd, Hecht Partners LLP, Los Angeles, California; for Plaintiff-Appellant.

Terence M. Grugan (argued) and Matthew A. Stoloff, Ballard Spahr LLP, Philadelphia, Pennsylvania; Scott S. Humphreys, Ballard Spahr LLP, Los Angeles, California; for Defendants-Appellants.

## OPINION

SCARSI, District Judge:

Relator, LLC, brought a qui tam action against CalCon Mutual Mortgage, LLC, and its founder and chief executive officer, Joshua K. Erskine, alleging that CalCon made false statements in its Paycheck Protection Program ("PPP") loan application in violation of the False Claims Act ("FCA"). The district court dismissed Relator's amended complaint without further leave to amend. Among other issues, Relator asserts on appeal that the district court erroneously applied the public disclosure bar to dismiss Relator's claim and abused its discretion in denying leave to amend. We agree and, therefore, reverse and remand for further proceedings.

## I.

Congress established the PPP in March 2020 to provide emergency loan assistance for businesses affected by the COVID-19 pandemic. Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, § 1102, 134 Stat 281, 286–94 (2020). Under the PPP, eligible businesses could obtain low-interest, forgivable loans to cover payroll costs, rent, utilities, and other business expenses during the pandemic. 15 U.S.C. §§ 636(a)(36)(F)(i), 636m(b); *see* Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20811, 20812 (Apr. 15, 2020). To obtain a PPP loan and have it forgiven, applicants had to certify that they were eligible for the loan and provide information on how they intended to use the funds. 15 U.S.C. §§ 636(a)(36)(G)(i), 636m(e)(3); Business Loan Program Temporary Changes, 85 Fed. Reg. at 20812, 20814, 20816; Business Loan Program Temporary Changes; Paycheck Protection Program—Revisions to Loan Forgiveness and

Loan Review Procedures Interim Final Rules, 85 Fed. Reg. 38304, 38310 (June 26, 2020).

As alleged in Relator's amended complaint, CalCon is a mortgage lender that provides conventional mortgage loans as well as other, less traditional products like jumbo, "fix and flip," construction, and bank statement loans. CalCon also acquires loans from other lenders, which it repackages into mortgage-backed securities. CalCon received and had forgiven a $4,964,200 PPP loan. Relator contends that CalCon made several misrepresentations in its applications to obtain the loan and have it forgiven, in violation of the FCA.

First, Relator argues that CalCon is a mortgage lender ineligible for PPP funds. Relator cites 13 C.F.R. § 120.110(b), which excludes "[f]inancial businesses primarily engaged in the business of lending" from PPP eligibility, with some exceptions for mortgage servicing companies. To support its argument that CalCon fell under § 120.110(b)'s exclusion, Relator points to CalCon's use of North American Industry Classification System ("NAICS") code 522292 in its PPP application,[1] which signifies that CalCon is a lending company that uses real estate as collateral. Relator also alleges that CalCon offers certain financial products that excepted mortgage servicing companies could not sell. Relator contends that, together, these facts indicate that CalCon is subject to § 120.110(b)'s exclusion and does not qualify for any exception. Relator reasons CalCon must have misrepresented its eligibility to

---

[1] "NAICS is the standard used by federal statistical agencies to classify businesses in collecting, analyzing, and publishing statistical data related to the U.S. business economy." *Gose v. Native Am. Servs. Corp.*, 109 F.4th 1297, 1307 n.9 (11th Cir. 2024) (citation modified).

receive PPP loans given its status as a mortgage lender excluded from eligibility.

Second, Relator alleges that CalCon's use of PPP funds necessarily failed to comply with the purposes authorized by statute because CalCon was not eligible to receive a PPP loan at all. Thus, CalCon's certification that it would not use PPP funds for any unauthorized purpose was also false.

Third, Relator contends that CalCon falsely certified that the PPP loan was necessary to support its operations because CalCon's revenue and profits did not decline during the pandemic. In support of this assertion, Relator alleges that the Federal Reserve supported mortgage lenders like CalCon by purchasing large amounts of mortgage-backed securities, that CalCon had access to significant capital through its parent company, and that CalCon increased the volume and profitability of its business during the relevant time period.

Fourth, Relator alleges that CalCon falsified its number of employees, which artificially inflated the size of the loan it received.

Fifth, because the foregoing certifications and statements were false, Relator asserts that CalCon's separate certification that its application contained no false statements was itself false.

Based on these alleged misrepresentations, Relator brought a claim against CalCon and Erskine for violation of the FCA, 31 U.S.C. § 3729(a)(1)(A)–(B). The United States declined to intervene in Relator's suit. After CalCon and Erskine moved to dismiss the initial complaint under Federal Rule of Civil Procedure 12(b)(6), Relator amended its complaint, which CalCon and Erskine also moved to dismiss.

The district court granted the motion. It held that the FCA's public disclosure bar, which prevents litigants from bringing FCA claims based on facts that have been publicly disclosed in the news media or in government proceedings or reports, applied to bar Relator's claim because the information supporting Relator's allegation that CalCon was a lender ineligible for a PPP loan had been publicly disclosed. *See* 31 U.S.C. § 3730(e)(4)(A). The district court pointed to PandemicOversight.gov, a public-facing government website that provides information on PPP loans, which memorializes CalCon's use of NAICS code 522292 in its loan application. The district court reasoned that PandemicOversight.gov qualifies as a federal report and that the NAICS code disclosed CalCon's status as a mortgage lender categorically excluded from PPP eligibility, so the purported fraud was publicly disclosed.

The district court concluded that this public disclosure barred Relator's entire claim, so it declined to consider several other arguments raised in the motion. Nonetheless, the court also determined that Relator failed to plausibly allege that CalCon falsified its employee headcount because Relator's headcount allegations rested on speculative, unwarranted deductions based on the square footage of one of CalCon's eleven offices.

Finally, the district court denied Relator leave to amend on the bases that Relator could not plead around the public disclosure bar and that Relator's failure to state a claim after voluntarily amending its pleading indicated that further amendment would be futile.

## II.

We review de novo a district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure

12(b)(6). *Bodenburg v. Apple Inc.*, 146 F.4th 761, 767 (9th Cir. 2025). We accept as true the plaintiff's nonconclusory factual allegations, construing them in the light most favorable to the plaintiff, and ask whether the complaint "states a claim for relief that is 'plausible on its face.'" *Gonzalez v. U.S. Dep't of State*, 174 F.4th 683, 690 (9th Cir. 2026) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). We review a district court's denial of leave to amend for abuse of discretion, but we review the futility of amendment de novo. *United States ex rel. Swoben v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1172 (9th Cir. 2016).

## III.

The FCA creates civil liability for any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A)–(B). "A private person, known as a *qui tam* relator, may bring a civil action under the FCA in the name of the U.S. government." *United States ex rel. Silbersher v. Allergan, Inc.*, 46 F.4th 991, 994 (9th Cir. 2022) (citing 31 U.S.C. § 3730(b)). "If the government declines to proceed, the relator may prosecute the action and, if successful, recover up to thirty percent of the damages." *United States ex rel. Silbersher v. Valeant Pharms. Int'l, Inc.*, 89 F.4th 1154, 1158–59 (9th Cir. 2024) (citing 31 U.S.C. §§ 3730(b)(4), (d)(2)). To make out an FCA claim, a qui tam relator must allege "(1) a false statement or fraudulent course of conduct, (2) made with the scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 899 (9th Cir. 2017) (quoting *United*

*States ex rel. Hendow v. Univ. of Phx.*, 461 F.3d 1166, 1174 (9th Cir. 2006)).

Congress limited who can bring an FCA qui tam action and on what basis such an action may rest. Relevant to this case is the public disclosure bar, which states:

> The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed—
>
> (i)   in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
>
> (ii)  in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
>
> (iii) from the news media,
>
> unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A).[2] The public disclosure bar's underlying goal is "to encourage suits by whistle-blowers

---

[2] "'[O]riginal source' means an individual who either (i) prior to a public disclosure . . . , has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section." 31 U.S.C. § 3730(e)(4)(B) (footnote omitted). Relator does not argue it qualifies as an original source.

with genuinely valuable information, while discouraging litigation by plaintiffs who have no significant information of their own to contribute." *United States ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 570 (9th Cir. 2016). To determine whether the public disclosure bar applies, a court must determine whether "(1) the disclosure at issue occurred through one of the channels specified in the statute; (2) the disclosure was public; and (3) the relator's action is substantially the same as the allegation or transaction publicly disclosed." *Valeant Pharms.*, 89 F.4th at 1163 (quoting *Allergan*, 46 F.4th at 996).

## A.

The district court rested its public disclosure bar analysis on its assessment of the information available on PandemicOversight.gov. Because the parties agree that PandemicOversight.gov qualifies as a federal report under 31 U.S.C. § 3730(e)(4)(A)(ii), we assume without deciding that it does. We must resolve whether the information Relator pleaded in support of its FCA claim is "substantially the same" as the information disclosed on PandemicOversight.gov. 31 U.S.C. § 3730(e)(4)(A).

"[F]or a relator's allegations to be 'based upon' a prior public disclosure, 'the publicly disclosed facts need not be identical with, but only substantially similar to, the relator's allegations.'" *Mateski*, 816 F.3d at 573 (quoting *United States ex rel. Meyer v. Horizon Health Corp.*, 565 F.3d 1195, 1199 (9th Cir. 2009)). To determine whether the publicly disclosed information is substantially similar to the relator's allegations, courts apply a formula:

> [I]f X + Y = Z, Z represents the allegation of fraud and X and Y represent its essential

elements. In order to disclose the fraudulent transaction publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, i.e., the conclusion that fraud has been committed.

*United States ex rel. Found. Aiding the Elderly v. Horizon W. Inc.*, 265 F.3d 1011, 1015 (9th Cir. 2001) (alteration in original) (quoting *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 654 (D.C. Cir. 1994)). "[T]he substance of the disclosure . . . need not contain an explicit 'allegation' of fraud, so long as the material elements of the allegedly fraudulent 'transaction' are disclosed in the public domain." *Mateski*, 816 F.3d at 571 (omission in original) (quoting *Horizon W.*, 265 F.3d at 1014).

Under the district court's application of the formula, X is CalCon's receipt and forgiveness of a PPP loan, which required CalCon to certify its eligibility to receive the loan, and Y is CalCon's status as an ineligible mortgage lender. X and Y yield Z, an inference that CalCon misrepresented that it was eligible to receive PPP funds given its field of business. According to the district court, X and Y were both publicly disclosed on PandemicOversight.gov, which published information about the issuance and forgiveness of CalCon's PPP loan as well as the NAICS code that demonstrated it was ineligible.

But the NAICS code indicating that CalCon is a mortgage lender does not reveal that CalCon was categorically ineligible to receive PPP funds. While 13 C.F.R. § 120.110(b) excludes "[f]inancial businesses primarily engaged in the business of lending" from PPP eligibility, there were exceptions to that general rule. The Small Business Administration, which

administered the PPP, established procedures that provided "limited circumstances under which certain businesses engaged in lending may be eligible" for a PPP loan despite the exclusion. *See* SBA Standard Operating Procedure 50 10 6: Lender and Development Company Loan Programs, pt. 2, § A, ch. 3(A)(2)(b) (2020), https://www.sba.gov/document/sop-50-10-lender-development-company-loan-programs [https://perma.cc/W2EZ-22S2]. As relevant here, "[a] mortgage servicing company that disburses loans and sells them within 14 calendar days of loan closing" and a "[m]ortgage compan[y] primarily engaged in the business of servicing loans" were eligible to receive PPP funds. *Id.* pt. 2, § A, ch. 3(A)(2)(b)(iii).

Standing alone, the NAICS code does not conclusively demonstrate CalCon's ineligibility given the existence of these exceptions. By analyzing only whether the NAICS code revealed that CalCon was a company engaged in lending, and not whether the code shed any light on whether CalCon fit into any of the exceptions, the district court impermissibly assessed Relator's eligibility misrepresentation theory "at the highest level of generality." *Mateski*, 816 F.3d at 577 (quoting *Leveski v. ITT Educ. Servs., Inc.*, 719 F.3d 818, 831 (7th Cir. 2013)).

To be sure, Relator's theory of the case is that these exceptions do not apply. But instead of relying on the NAICS code to support that assertion, Relator offers allegations to address the exceptions. For example, it avers that some of the products CalCon offers, including jumbo loans, cannot be disbursed within 14 days of loan closing. The district court did not address whether information that CalCon offers jumbo loans, or that jumbo loans cannot be disbursed within 14 days, was publicly disclosed. *See id.* at

578 (holding that the public disclosure bar did not block an FCA claim because, although some of the information underlying the claim was revealed by prior public reports, none of those reports "provided specific examples or the level of detail offered by" the qui tam relator).

**B.**

CalCon and Erskine argue on appeal that the public disclosure bar still applies because, beyond the NAICS code, Relator's allegations toward CalCon's ineligibility all rest on CalCon's website and other online sources that qualify as "news media" within the meaning of 31 U.S.C. § 3730(e)(4)(A)(iii).

The FCA does not define the term "news media," so our analysis must begin with the ordinary meaning of the statutory text. *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 407 (2011). When Congress enacted § 3730(e)(4)(A)(iii) in 1986, dictionaries defined "news" as "a report of a recent event," "what is reported in a newspaper, news periodical, or news broadcast," or "matter that is interesting to newspaper readers or news broadcast audiences . . . [or] that is suitable for news copy." *News*, Webster's Third New International Dictionary 1524 (1986); *cf. Schindler*, 563 U.S. at 407–08 (using the same dictionary to determine the ordinary meaning of "report" as used in § 3730(e)(4)(A)). "Medium," the singular of "media," is defined as "something through or by which something is accomplished, conveyed, or carried on," such as "a channel, method, or system of communication, information, or entertainment" or "a vehicle (such as a radio or television program or a newspaper) used to carry advertising." *Medium*, Webster's Third New International Dictionary 1403. Reading these definitions together, we understand

"news media" to refer to methods of communication that are used to convey information about recent events that may be of interest to the general public or that would otherwise be commonly found in a newspaper, news broadcast, or other news source.

The inclusion of "news media" in § 3730(e)(4)(A)'s list of information sources suggests Congress intended the public disclosure bar to have an appreciably "broad[] sweep." *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 290 (2010). But "news media" is not so broad as to include every conceivable channel that could be used to convey any type of information. Had Congress intended such a broad rule, it would not have specified sources in the statute. A reading that broad would also arguably render other sources specified in the statute surplusage. For this reason, "news media" cannot reasonably encompass every website on the internet. Many websites contain information that has nothing to do with recent events and that would not likely be included in newspapers and broadcasts. For example, a restaurant may use its website to post its dinner menu, a gym may list its monthly membership rate and the exercise classes it offers, and a retail store may post the products it has in stock that are available for purchase. Private companies use their websites to post all sorts of information; the mere fact that information is publicly available on the internet does not mean that a website necessarily qualifies as "news media" under the FCA. *See Schindler Elevator*, 563 U.S. at 414 (noting that "the public disclosure bar applies to some methods of public disclosure and not to others").

Of course, some websites have mixed purposes. A website may include both information that is entirely unrelated to recent events and other information that is

traditionally viewed as newsworthy. In such situations, courts must consider various factors to determine whether, on balance, the website fits under the meaning of "news media." First, courts should evaluate whether the primary purpose of the website is to disseminate information about recent events and educate the public. A website whose primary goal is to inform members of the public about recent events is likely analogous to traditional outlets that indisputably qualify as "news media," like newspapers and television broadcasts. Second, courts should consider whether the entity overseeing the website primarily publishes information about itself or about third parties. "News media" connotes a certain degree of separation between the source of the information and the medium that conveys it. *Cf.* 5 U.S.C. § 552(a)(4)(A) (defining "a representative of the news media" for purposes of the Freedom of Information Act as "any person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience"). Said another way, "news media" often refers to individuals or entities that collect information from outside sources and then, in the exercise of editorial judgment, decide what to publish. Of course, the mere fact that a person or entity publishes information about itself on its website does not preclude the website from falling under the "news media" banner. After all, even though the *New York Times* sometimes reports on itself, we doubt anyone would seriously argue that the *New York Times* is not news media. *E.g.*, Katie Robertson, *New York Times Wins 3 Pulitzer Prizes*, N.Y. Times (May 4, 2026), https://www.nytimes.com/2026/05/04/business/media/pulit zer-prizes-2026.html [https://perma.cc/U3TA-5C5W]. But a

website that mostly contains information about the publisher of the website itself is unlikely to qualify as "news media."

We are keenly aware that the media landscape is ever changing, and members of the public consume the news from novel and varied sources. In determining whether a particular source qualifies as "news media," courts should consider the extent to which members of the public would reasonably describe the source as "news media" in everyday speech. *See Schindler Elevator*, 363 U.S. at 410 (cautioning "against interpreting the public disclosure bar in a way inconsistent with a plain reading of its text"). For example, in this modern digital age, many people consume the news from social media, newsletters, or podcasts. If a reasonable news consumer would hold the source in question to the same standards of factual accuracy and journalistic integrity as those distributed through legacy media, that would weigh in favor of treating it as "news media" within the meaning of § 3730(e)(4)(A)(iii).

Guided by these principles, we are not persuaded that CalCon's website, which is one of the few sources Relator specifically cites in the amended complaint, qualifies as "news media" under the FCA. While CalCon likely would prefer that its website reach a broad audience of potential and current borrowers, the amended complaint contains no allegations indicating that the website's intended audience extends beyond CalCon's normal business activities. The amended complaint does not raise an inference that CalCon's primary purpose in operating its website is to disseminate information about recent events and educate the public, or that CalCon curates information from third-party sources. Nor does the amended complaint suggest that any members of the public reasonably would describe the website as "news media" in everyday speech.

We cannot determine on this record whether other public, online sources Relator references in the amended complaint qualify as "news media." The district court should address the issue in the first instance. *See United States ex rel. Sam Jones Co. v. Biotronik, Inc.*, 152 F.4th 946, 960 (9th Cir. 2025) (after concluding the public disclosure bar did not apply to bar a qui tam FCA action, declining to reach any additional arguments for dismissal the district court did not reach in the first instance), *cert. denied*, No. 25-1059, 2026 WL 1377152 (U.S. May 18, 2026).

## IV.

The district court also held that Relator failed to plead a facially plausible claim that CalCon falsely inflated its number of employees in its application materials. We agree that Relator's theory currently rests on speculation and unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."). Relator supposes that CalCon cannot employ 432 individuals because its 5000-square-foot headquarters could comfortably house only 33 employees. Even if we were to accept Relator's method of estimating the number of CalCon employees, it would not be possible to reach Relator's conclusion without making unsupported deductions of fact. CalCon has ten other offices. Relator assumes, without factual support, that none of CalCon's other ten offices could house a greater number of employees and that Relator has no fully remote employees. The district court correctly dismissed Relator's employee headcount theory. *See United States ex rel. Aflatooni v. Kitsap Physicians Servs.*, 163 F.3d 516, 526 (9th Cir. 1999) ("[T]he purposes of the [FCA] would not be served by allowing a

relator to maintain a qui tam suit based on pure speculation or conjecture.").

That said, the district court abused its discretion by denying Relator leave to amend. A district court should grant leave to amend a dismissed complaint freely unless it is clear that the complaint could not be saved by amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Here, Relator might be able to allege additional facts in support of its theory that CalCon falsified its employee headcount. *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment.").

In denying leave to amend, the district court noted that CalCon and Erskine had challenged this theory in their motion to dismiss the original complaint, and that Relator failed to cure the pleading deficiency when it voluntarily amended its complaint. We have never held that failing to cure all pleading deficiencies after a single, voluntary amendment necessarily means further amendment would be futile. To the contrary, our precedents indicate that the "*[r]epeated* failure to cure deficiencies by amendments previously allowed" is indicative of the futility of future amendment. *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 809–10 (9th Cir. 1988) (emphasis added). Relator here elected to amend its complaint as a matter of course after CalCon and Erskine filed a motion to dismiss but before the district court had an opportunity to address the arguments presented therein. *See* Fed. R. Civ. P. 15(a)(1). In other words, when it filed its amended complaint, Relator did not have the benefit of a court order identifying specific

deficiencies in its pleading. When it issued its order crediting CalCon and Erskine's challenge to the employee headcount theory, the district court should have given Relator an opportunity to amend its complaint to address the district court's concerns.[3]

## V.

The district court erred in dismissing Relator's complaint without leave to amend. We REVERSE and REMAND for further proceedings consistent with this opinion.

---

[3] Beyond the alleged misrepresentations about CalCon's eligibility to receive PPP funds, and its number of employees, Relator raises several other theories of misrepresentation. The district court reasoned that it did not need to independently analyze these other theories given its conclusion that the public disclosure bar applied to the eligibility misrepresentation. Given the disposition here, we leave for the district court to resolve whether Relator's other theories of misrepresentation are subject to the public disclosure bar. *See Sam Jones Co.*, 152 F.4th at 960. We also do not decide here whether, when a single FCA claim is premised on several alleged fraudulent transactions, the public disclosure of one of those fraudulent transactions precludes the entire claim, or if the relator can still bring a claim based on any of the other non-publicly disclosed frauds.